[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10581
Non-Argument Calendar

_____

D.C. Docket No. 0:10-cv-60754-KMW

LARRY ZARRELLA, an individual,
ZARRELLA CONSTRUCTION, INC.,
a Florida corporation,

Plaintiffs-Appellants,

versus

PACIFIC LIFE INSURANCE COMPANY,
on behalf of all others similarly situated,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 26, 2012)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Larry Zarrella and Zarrella Construction, Inc., (collectively, Zarrella) appeal

from the district court's order granting summary judgment to Pacific Life Insurance Company (Pacific Life). Zarrella also argues the district court abused its discretion by rendering summary judgment before discovery was completed and in denying a motion to compel Pacific Life to produce certain documents. The principal issue is whether the district court properly rejected Zarrella's claims that Pacific Life breached its agreement to provide policies that complied with § 412(i) of the Internal Revenue Code and misrepresented the validity and tax consequences of the policies it sold to him for inclusion in a § 412(i) pension plan. Because we conclude that the district court did not abuse its discretion in making the evidentiary rulings that Zarrella challenges and properly granted summary judgment, we affirm.[1]

## I.

We provide only a brief synopsis of the facts, which are more fully set out in the district court's summary judgment order, *Zarrella v. Pacific Life Ins. Co.*, 820 F. Supp. 2d 1371 (S.D. Fla. 2011).

Section 412 of the Internal Revenue Code provides that certain employer-

---

[1] Although Zarrella originally asserted that the district court had jurisdiction over this action as a class action, 28 U.S.C. § 1332(d), he subsequently abandoned class status. The district court retained subject matter jurisdiction based upon diversity of citizenship. *Id.* § 1332(a).

created retirement plans for employees that are funded by insurance polices and/or annuities can receive favorable tax treatment if certain conditions are met. 26 U.S.C. § 412. One condition requires that the "benefits provided by the plan equal the benefits provided under each contract at normal retirement age." *Id.* § 412(i)(3) (2005); § 412(e)(3) (same).[2]

Zarrella, the owner of Zarrella Construction, created a § 412(i) retirement plan for his employees, with the aid of independent consulting firms and his financial advisor. The plan was funded solely with life insurance policies from Pacific Life. The policies repeatedly advised Zarrella that Pacific Life was merely a provider of life insurance and was not offering any tax or legal advice as to the plan. And they further urged Zarrella to "[c]onsult [his] attorney or tax advisor for complete up-to-date information concerning federal and state laws in this area." The policies warned that it was "Pacific Life's understanding that certain risks may increase for 412(i) plans where the percentage of contribution [in the plan] allocated to life insurance exceeds fifty percent of the total annual plan contribution." And the agreements stated that "Pacific Life makes no

---

[2] The Pension Protection Act of 2006, 120 Stat. 780, 820-26, Pub. L. No. 109-280, amended and altered various sections of the Internal Revenue Code. As a result, the section at issue in this appeal, former § 412(i), is now codified at § 412(e)(3). But there have been no material alterations to the provision. Therefore, consistent with the parties' briefs, the contracts and other documents at issue, and the district court's order, we refer to § 412(i) to avoid confusion.

3

determination or representation as to whether [the policies] . . . meet[] any [of the] requirements of . . . Sec. 412(i).  Any such determination, like all other qualified plan design and administration issues, must be made by the qualified plan administrator, plan trustee, or the plan's other legal or tax advisors."  Finally, the policies provided:

> Please understand that Pacific Life has not made a determination that this plan achieves any specific tax or other objectives.  Further, Pacific Life is not acting as administrator, fiduciary, or trustee of your 412(i) plan for any purpose, nor will Pacific Life supervise any plan administrator, trustee, or fiduciary in the discharge of his or her obligations.  Pacific Life's role is limited solely to providing you with, and servicing, your life insurance policies.  Accordingly, it is important that you speak with your independent tax/legal advisors before you complete the purchase of the policy and go forward with your plan.  Your independent tax/legal advisors can discuss with you all of the risks and benefits of your plan and advise you how to proceed.  Please further understand that Pacific Life has not authorized its representatives to provide you with tax or legal advice, and you may not rely on any such advice provided by your Pacific Life representative.

The policies also included a rider, which explained that Pacific Life did not make funding determinations.  The rider stated:

> This rider is an agreement between Pacific Life Insurance Company . . . and the trustee of the Benefit Plan ("Plan") which owns the Policy to which this rider is attached (the "Policy"), and is in accordance with Internal Revenue Code (the "Code") 412(i) and Treasury Regulation 1.412(i)-1(b)(2)(ii).

4

The IRS subsequently audited the plan and found that it did not comply with § 412(i) because the value of the life insurance policies exceeded the benefits to be provided under the plan.  As a result, Zarrella was subject to liability for back taxes and penalties.

Zarrella sued Pacific Life in May of 2010, alleging, among other things,[3] that:  (1) Pacific Life breached the provision of its agreements with him that said the policies he purchased satisfied the requirements of § 412(i); and (2) Pacific Life violated California's Unfair Competition Law, premised upon a predicate violation of the California False Advertising Law (the UCL/FAL claim).  Cal Bus. & Prof. Code § 17200, *et seq.*; *id.* § 17500, *et seq.*; *see Medrazo v. Honda of N. Hollywood*, 140 Cal. Rptr. 3d 20, 29 (Cal. App. 2d Dist. 2012) (explaining that plaintiff may have claim under the UCL for a violation of the FAL).

Discovery in this case lasted over a year, continuing more than four months beyond the deadline to which the parties initially had agreed.  During discovery, Zarrella filed a motion to compel production of documents drafted by and communications with Pacific Life's outside counsel, Stephen Dicke, whose opinion letter Pacific Life had produced.  The district court denied that motion.

---

[3] Zarrella's original complaint alleged several other counts.  But the district court dismissed those other claims, and Zarrella does not appeal the dismissals.

5

Subsequently, Zarrella sought and obtained an extension of time within which to conduct the deposition of a former Pacific Life executive, Daragh O'Sullivan. Zarrella ultimately deposed O'Sullivan on October 14, 2011.

Pacific Life moved for summary judgment on August 1, 2011, and, on October 25, 2011, the court granted the motion. The court found summary judgment was due because, among other reasons, even if the language in the rider created an enforceable contractual duty, Pacific Life had not breached that duty. No evidence indicated that the overfunding of Zarrella's § 412(i) plan was a consequence of the insurance policies themselves. Rather, the plan was overfunded because Zarrella had purchased too much insurance. For the same reasons, the district court found, Zarrella could not show the requisite damages caused by any representation that Pacific Life had made that would be necessary to maintain a UCL/FAL claim.

Zarrella moved for reconsideration under Federal Rule of Civil Procedure 59(e), asserting that, although the O'Sullivan deposition was completed 11 days before the court's ruling, the district court erred in granting summary judgment before Zarrella could inform the court of evidence that had come from the deposition. The district court denied the motion. This is Zarrella's appeal.

II.

We review *de novo* a district court's grant of summary judgment, viewing all evidence in the light most favorable to the nonmoving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate when "'there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)) (omission in original). We review a district court's discovery rulings for abuse of discretion. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir. 2004).[4] Likewise, we review the denial of a Rule 59(e) motion for reconsideration only for abuse of discretion. *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1238 (11th Cir. 2012) (holding that we review a Rule 59(e) motion seeking reconsideration of the grant of summary judgment only for abuse of discretion, not *de novo*), *cert. denied*, 2012 WL 2995212 (Oct. 9, 2012).

### III.

First, Zarrella contends the district court erred when it denied his motion for reconsideration, which was based upon a deposition that was conducted after summary judgment briefing was completed but before the district court had ruled.

---

[4] The parties agree Florida law supplies the rule of decision for Zarrella's breach-of-contract claim, and California law provides the rule of decision for the UCL/FAL claim.

7

He argues the district court should not have decided the summary judgment motion before discovery was completed.

"The district court is not required to await the completion of discovery before ruling on a motion for summary judgment." *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990).  Even though Zarrella deposed O'Sullivan 11 days before the court ruled on Pacific Life's motion for summary judgment, he never alerted the district court to any new information obtained in that deposition that could affect the outcome of the court's decision.  Importantly, "the only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact.  A Rule 59(e) motion cannot be used to . . . present evidence that could have been raised *prior to the entry of judgment*." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (emphasis added) (internal citations, quotation marks, and alterations omitted).

Moreover, in his motion for reconsideration, Zarrella pointed to no material evidence that would undermine the district court's decision that summary judgment was proper.  Nor does Zarrella identify any such evidence on appeal.  Zarrella contends only that portions of the O'Sullivan deposition support his assertion that Pacific Life had directed its agents to provide "plan expertise."  But,

8

even accepting this questionable assertion, that Pacific Life may have done so is immaterial:  It never *promised* to do so or *represented* that it did so in the contract or documents Zarrella pointed to in responding to Pacific Life's motion for summary judgment.  So that it may have actually provided plan expertise does not support either Zarrella's breach-of-contract or false-advertising claims. Accordingly, we conclude the district court did not err in granting summary judgment before Zarrella had completed discovery or abuse its discretion in denying Zarrella's motion for reconsideration based upon the O'Sullivan deposition.

IV.

Zarrella also contends the district court abused its discretion in refusing to compel production of certain attorney-client privileged documents based upon Pacific Life's production of outside counsel Dicke's letter that opined Pacific Life's policies were suitable for use in a § 412(i) plan.  "A district court's denial of a motion to compel discovery is reviewed for an abuse of discretion." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 642 F.3d 1344, 1349 (11th Cir. 2011).  Zarrella's quarrel with the district court's conclusion that the materials he sought were privileged is meritless.  As both the Dicke letter itself and Zarrella's

9

own briefing in support of the motion to compel acknowledged, the Dicke letter was non-privileged. Zarrella offers no support, and we know of none, for the extraordinary assertion that disclosure of concededly non-privileged communication with counsel operates as a waiver of privilege with respect to all other communications between a party and the same attorney. Thus, the district court did not abuse its discretion in denying Zarrella's motion to compel.

V.

Finally, Zarrella contends that the district court's determination that his breach-of-contract and false-advertising claims fail as a matter of law was incorrect. He says the insurance policies he purchased from Pacific Life overfunded his § 412(i) plan and, as a result, the IRS required him to pay back taxes and penalties. Therefore, he asserts, Pacific Life breached its contractual obligation to provide a product suitable for inclusion within a § 412(i) plan. But neither before the district court nor on appeal has he cited any evidence whatsoever indicating that the policies were not suited for a § 412(i) plan.

Rather, as the district court concluded and both parties' experts agreed, the overfunding of Zarrella's plan was a consequence of the plan's design, specifically the amount of insurance in the plan, not the Pacific Life insurance products the plan purchased. Indisputably, Pacific Life never agreed to administer the plan.

10

And, as noted above, even if it were true, Zarrella's contention that Pacific Life actually provided expertise in the design and implementation of his § 412(i) plan is entirely beside the point.  Pacific Life made no contractual promise to do so.  So that unsupported factual assertion cannot support a breach-of-contract claim.

Pacific Life contracted with Zarrella to provide Zarrella with life insurance policies for use in Zarrella's § 412(i) retirement plan.  As more fully set out in the district court's well-reasoned opinion, even assuming language in the documents that comprise the parties' agreements could be construed to obligate Pacific Life to provide a policy in accordance with the specific requirements of § 412(i)(3), Zarrella has provided no competent evidence that Pacific Life failed to fulfill that obligation.[5]  820 F. Supp. 2d at 1376-78.

Furthermore, as the district court correctly stated, Pacific Life never represented that any *plan* holding one of its insurance policies would comply with

---

[5] Zarrella also argues that "Pacific Life breached the policy contract when it was notified of overfunding but refused to alter the policy . . . ."  At no point, however, did Zarrella make anything resembling this argument in responding to Pacific Life's motion for summary judgment. That Zarrella cited generally the portion of the record he now relies upon hardly means that he adequately raised this argument before the district court.  Accordingly, because neither this new legal theory nor the factual assertion Zarrella contends supports it were ever presented to the district court, we do not consider this contention.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (citations and internal quotation marks omitted)); *see also* Fed. R. Civ. P. 56(c)(1)(A), (c)(3), (e) (requiring a party opposing summary judgment to assert facts upon which it relies and support those facts with citations to the record, and providing that a district court "need consider only the material cited"); S.D. Fla. R. 7.5(c)(2).

11

the requirements of § 412(i).  Indeed, in its agreements with Zarrella, Pacific Life repeatedly and emphatically disclaimed such responsibility and instructed Zarrella that design and maintenance of the plan were his own responsibility in conjunction with his tax and legal advisors.[6]  At most, Pacific Life represented only that its insurance *policies* were themselves compliant with the requirements of § 412(i) and could be included in a § 412(i) plan.  Zarrella has pointed to no competent evidence indicating that this assertion, even assuming Pacific Life made it, was false or that Pacific Life's actions were in any way inconsistent with it.  Because there is no evidence he "suffered injury in fact and has lost money or property as a result" of any misrepresentation or false statement he relied upon, Zarrella has no standing to bring a UCL/FAL claim.  Cal Bus. & Prof. Code § 17204; *see Medrazo*, 140 Cal. Rptr. 3d at 29 ("[T]he language in the UCL limiting standing to plaintiffs who lost money 'as a result of the unfair competition' (Bus & Prof. Code § 17204) imposes an actual reliance requirement on the named plaintiff . . . in a UCL action based upon . . . false advertising . . . ." (citing *In Re Tobacco II Cases*, 207 P.3d 20, 39 & n.17 (Cal. 2009))).  Therefore, as more fully set out in the

---

[6] Zarrella's contention that these disclaimers are themselves false or misleading because Pacific Life actually provided plan advice and administrative services is new on appeal.  And Zarrella offers no reason why we should vary in this case from our usual rule that we do not consider arguments raised for the first time on appeal.  *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249-50 (11th Cir. 2012).

12

district court's thorough opinion, summary judgment as to that claim was proper. 820 F. Supp. 2d at 1378-81.

## VI.

We conclude that the district court did not abuse its discretion when it denied Zarrella's motion for reconsideration and his motion to compel.  And the district court properly rendered summary judgment in favor of Pacific Life on his claims that Pacific Life breached its agreements and violated California's UCL/FAL.  Accordingly, for the reasons stated above and in the district court's opinion, the decision of the district court is

**AFFIRMED**.